**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| JILL K. JINKS, *individually and as trustee of the Jinks Heritage Trust*, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 9:21-cv-00138-DCN ) ) **ORDER** |
| SEA PINES RESORT, LLC, COMMUNITY SERVICES ASSOCIATES, INC., ASSOCIATION OF SEA PINES PLANTATION, PROPERTY OWNERS, INC. AND THE ADVISORY BOARD, | ) ) ) ) ) ) |
| Defendants. | ) ) |

The following matter is before the court on defendant Community Services Associates, Inc.'s ("CSA") motion for summary judgment, ECF No. 39, and plaintiff Jill K. Jinks's ("Jinks") motion for discovery, ECF No. 49. For the reasons set forth below, the court denies the motion for summary judgment without prejudice and grants the motion for discovery.

## I. BACKGROUND

This case concerns a referendum to amend certain Declaration of Covenants and Restrictions dated September 7, 1974, recorded in the Beaufort County, South Carolina Register of Deeds (the "1974 Covenants"). The 1974 Covenants, along with various other recorded covenants and declarations, govern the rights and responsibilities of property owners of Sea Pines Plantation located on Hilton Head Island, South Carolina.

In November 2020, CSA called the referendum at issue to amend the 1974 Covenants. CSA is a South Carolina nonprofit corporation that is the record owner of the

1

roads, gates, open spaces, and common properties in the Sea Pines community and performs repairs necessary to maintain the attractiveness and value of the community and its properties. CSA's proposed amendment, if enacted, would create an "Infrastructure Improvement Fund" and impose an additional annual assessment of $600.00 upon residential property owners in Sea Pines Plantation, including Jinks. The Infrastructure Improvement Fund would be "used only for the repair, replacement, addition and improvement of the roads, bridges, bulkheads, leisure trails, storm water facilities and systems located in or servicing Sea Pines. . . ." ECF No. 1, Compl. ¶ 48 (citing ECF No. 1-7). Under the 1974 Covenants, "Participating Property Owners" are entitled to vote on the referendum. A "Participating Property Owner" is defined under the 1974 Covenants as

> all those owners of Residential lots, and Family Dwelling Units, except the Company, who execute that certain Agreement, known as the 'Advisory Group Agreement', and all owners of Residential lots and Family Dwelling Units who purchase property in Sea Pines Plantation which is subject to the payment of the same or greater dollar amount of the assessments provided for herein.

ECF No. 1-1. For the amendment to be approved, 75 percent of the Participating Property Owners who return a ballot must vote in favor of the amendment.

Jinks, a residential property owner in Sea Pines Plantation, objected to the referendum on the basis that none of the named defendants,[1] including CSA, had the

---

[1] Defendant Sea Pines Resort, LLC (the "Resort") owns and operates the Sea Pines Resort located within Sea Pines Plantation. Defendant Association of Sea Pines Plantation Property Owners, Inc. and the Advisory Board ("ASPPPO") is a nonprofit corporation formed in 1973, whose stated mission is to provide a forum for and to promote the common good and general welfare of residential property owners on Sea Pines Plantation and to represent residential property owners in all matters in pursuit of these objectives. Jinks alleges that the Resort, ASPPPO, and CSA conspired to promulgate the unauthorized referendum and proposed amendment to the 1974

authority to call for or pursue any referendum to amend the 1974 Covenants. Despite the objection, defendants moved forward with the referendum. Accordingly, on January 13, 2021, one week before the referendum voting ballots were due, Jinks filed the instant action, asserting claims for declaratory judgment, breach of contract, nuisance, and conspiracy against CSA, the Resort, and ASPPPO for their actions taken in connection with the referendum. In particular, Jinks seeks a declaration that CSA lacks the legal authority to call for the subject referendum or to implement the referendum and that the proposed amendment is unenforceable if passed.

On March 12, 2021, CSA filed a motion for summary judgment. ECF No. 37. On March 31, 2021, Jinks responded in opposition, arguing that CSA's motion is premature because she has not had an opportunity to conduct any discovery. On April 5, 2021, Jinks filed the instant motion for discovery pursuant to Federal Rule of Civil Procedure 56(d). ECF No. 49. On April 6, 2021, CSA responded, ECF No. 50, and on April 13, 2021, Jinks replied, ECF No. 52. On May 11, 2021, the court held a hearing on the motion. ECF No. 58. As such, the motion for discovery has been fully briefed and is now ripe for review.

## II. STANDARD

In general, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir.1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). Consequently, Federal Rule of Civil

---

Covenants. Only CSA has moved for summary judgment, and the court therefore focuses on the allegations against CSA for the purposes of this motion. ASPPPO has a pending motion to dismiss that the court will address in a separate order.

3

Procedure 56(d) provides that a party who lacks the material facts required to respond to a summary judgment motion may file an "affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A broad assertion that adequate discovery has not yet taken place is not sufficient; rather, a party who wishes to delay summary judgment under Rule 56(d) must use the affidavit to "specify[ ] which aspects of discovery require[ ] more time to complete." Id.

In ruling on a Rule 56(d) challenge to a summary judgment motion, a district court may defer consideration of the motion, deny the motion, or "issue any other appropriate order." Fed. R. Civ. P. 56(d). Relief under Rule 56(d) is "broadly favored and should be liberally granted" in order to protect non-moving parties from premature summary judgment motions. McCray v. Md. Dep't of Transp., Md. Transit Admin., 741 F.3d 480, 484 (4th Cir. 2014) (quoting Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore, 721 F.3d 264, 281 (4th Cir. 2013)). However, a Rule 56(d) motion may be denied "when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014).

## III. DISCUSSION

Jinks argues that the court should deny CSA's motion for summary judgment as premature or defer consideration of CSA's motion until Jinks has had an opportunity to conduct the discovery necessary to oppose it. The court first addresses two procedural concerns raised by Jinks. The court then addresses the merits of Jinks' request for an opportunity to conduct discovery.

### A. Summary Judgment Procedure

Jinks argues that CSA's motion is procedurally improper for two reasons. First, Jinks argues that it was improper for CSA to file a motion for summary judgment prior to filing an answer or motion to dismiss under Federal Rule of Civil Procedure 12. Second, Jinks argues that because CSA has yet to file a responsive pleading, CSA is in default. The court addresses each argument below.

With respect to Jinks's first contention, the court disagrees. Under Rule 56(b), a party may properly file a motion for summary judgment prior to filing a responsive pleading. See Fed. R. Civ. P 56(b) ("[A] a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."); Hubicki v. ACF Indus., Inc., 484 F.2d 519, 522 (3d Cir. 1973) ("Rule 56(b) authorizes a defending party to move 'at any time' for a summary judgment in his favor. Such a motion may be made before pleading to the complaint . . . ."); Cheung v. Hamilton, 298 F.2d 459, 460 (1st Cir. 1962) (stating that it is proper to file a summary judgment motion without filing an answer); INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391, 404 (6th Cir.1987) ("[N]o answer need be filed before a defendant's motion for summary judgment may be entertained."); Rasnick v. Dickenson Cty. Sch. Bd., 2003 WL 21432562, at *1 (W.D. Va. June 12, 2003) ("The defendant has filed a motion for summary judgment before answering, which is permissible."). Therefore, CSA's filing of its motion for summary judgment before any responsive pleading was not, in itself, inappropriate.

The law is less clear with respect to Jinks's second contention. While Rule 56(b) says that a motion for summary judgment may be filed at any time, the issue here is

whether a defendant may be in default if it files only such a motion.  The Federal Rules of Civil Procedure provide that "[a] defendant must serve an answer within 21 days after being served with the summons and complaint."  Fed. R. Civ. P. 12(a)(1)(A)(i).  If a defendant timely files a motion under Rule 12, this deadline is tolled pending the court's disposition of the motion.  Fed. R. Civ. P. 12(a)(4).  The question of whether service of a motion for summary judgment under Rule 56 similarly tolls this deadline does not appear to have been addressed by the Fourth Circuit or this district, but the plain language of Rule 12(a)(4) indicates that it does not.  See Fed. R. Civ. P. 12(a)(4) (specifically noting that the deadline is tolled by the "serving of a motion under this rule" (emphasis added)).  Thus, CSA has not pointed to, and this court could not locate, any rule that would suggest CSA's deadline to file a responsive pleading was tolled by its summary judgment motion.

On the other hand, CSA argues that it cannot be in default because Federal Rule of Civil Procedure 55(a) provides that, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  The advisory committee's notes provide that "Acts that show an intent to defend have frequently prevented a default even though not connected to any particular rule."  Fed. R. Civ. P. 55(a) advisory committee's note to 2007 amendments, subdivision (a).  The court finds that CSA has obviously indicated its intent to defend by filing its motion for summary judgment and, as such, an entry of default would not be appropriate.  Nevertheless, given that the it is unclear whether CSA's motion tolled its responsive pleading deadline, the court orders that CSA file such a pleading within 30 days of this order.  See Kimbler v.

Spear, 2017 WL 1337276, at *3 (W.D. Va. Apr. 11, 2017) ("While it is unclear whether a Rule 56 motion operates to toll the defendants' response deadline, I need not decide the question, but I will require the defendants to now file an answer."). Having resolved Jinks's procedural concerns, the court now turns to the merits of Jinks's request to deny or defer consideration of CSA's summary judgment motion until she has had an opportunity to conduct discovery.

### B. Motion for Summary Judgment and Motion for Discovery

In its motion for summary judgment, CSA asserts that no genuine issue of material fact exists in this case because, even assuming it did not have authority to call a referendum, the Participating Property Owners ratified CSA's allegedly unauthorized actions by voting in favor of the amendment. In support of this assertion, CSA puts forth evidence that, after Jinks filed the instant action, more than 75 percent of the Participating Property Owners who returned a ballot voted in favor of the amendment—meaning that the referendum passed. Jinks, in turn, argues that the issue of ratification of an unauthorized act is a fact-specific inquiry, such that CSA's motion for summary judgment is premature when the parties have not conducted any discovery on the issue.[2]

---

[2] Jinks also argues that discovery is needed with respect to CSA's authority to call for the referendum. The court agrees with CSA that discovery related to CSA's authority to call the referendum is not necessary to resolve its summary judgment motion. As CSA explains, "CSA has assumed that the crux of Jinks's complaint (that CSA lacked authority to call the referendum) is true." ECF No. 50 at 5. Therefore, evidence supporting or negating Jinks's allegation that CSA lacked authority to call the referendum would not impact the court's analysis and disposition of the motion for summary judgment—meaning that Jinks's request for the same cannot be a basis for granting her motion for discovery. Still, since CSA has not outright conceded that it lacked authority, Jinks is entitled to discovery on this issue. The court therefore clarifies that, while it does not grant the instant motion due to Jinks's need for discovery relating to CSA's lack of authority, the court does not exclude that issue from the scope of discovery.

The court agrees with Jinks. To begin, the timing of CSA's summary judgment motion, before a scheduling order has been entered in this case, strongly suggests the type of prematurity that warrants deferring or denying consideration. See Investors Title Ins. Co. v. Bair, 232 F.R.D. 254, 256–57 (D.S.C. 2005) (finding consideration of plaintiff's motion for summary judgment premature where plaintiff filed his motion only four weeks after the court's scheduling order and over four months prior to the appointed end of discovery). As a further indication of the motion's prematurity, and in compliance with Rule 56(d), Jinks's motion for discovery and supporting affidavit specifically identifies numerous outstanding discovery items that could create a genuine issue of material fact with respect to the question of ratification.

Three essential elements are necessary to prove ratification: "(1) acceptance by the principal of the benefits of the agent's acts; (2) full knowledge of the facts; and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangements." Anthony v. Padmar, Inc., 465 S.E.2d 745, 755 (S.C. Ct. App. 1995) (emphasis in original). Jinks maintains that discovery is needed with respect to the second and third elements, and the court concurs.

### 1. Full Knowledge of the Facts

Jinks argues that CSA cannot satisfy the second element of ratification—full knowledge of the facts—"if the PPOs who voted were not made aware of all the material facts surrounding the referendum—including the direct challenge by multiple [Participating Property Owner]s to CSA's ability [] to amend the 1974 Covenants." ECF No. 47 at 7. In other words, Jinks argues that if the Participating Property Owners did not

know that CSA lacked the authority to call the referendum, they cannot have ratified the unauthorized act by voting in favor of the amendment.

CSA contends that it has satisfied the second element of ratification because the Participating Property Owners both knew that CSA was calling the referendum and that it lacked authority to do so. [3] CSA argues that the Participating Property Owners knew that CSA was calling the referendum "because the notice of the referendum sent to each owner said as much." ECF No. 29-1 at 9–10 (citing ECF No. 1-10). CSA further argues that the Participating Property Owners knew that CSA lacked authority to do so because they "had at least constructive notice of the terms" of the 1974 Covenants and other governing documents because the documents are public. ECF No. 50 at 9 (citing Ten Woodruff Oaks, LLC v. Point Dev., LLC, 683 S.E.2d 510, 515 (S.C. Ct. App. 2009)).

The court finds that discovery is needed with respect to the second element of ratification. Where the agent fails to disclose material information to the principal concerning the agent's action, the defense of ratification fails. Anthony, 320 S.C. at 452–453 ("In view of our finding concerning the general partners' breach of their fiduciary duties to the limited partners in failing to disclose material information, we find the defense of ratification to be without merit."). In other words, "[i]n the absence of

---

[3] CSA also argues that a nonprofit is not required to inform its members each and every time there is a challenge to its authority to act "no matter how few members hold that view or how fringe that theory may be." ECF No. 50 at 5–6. This argument fails for two reasons. First, the question is not whether a nonprofit is "required to inform" members of the challenge to its authority. Rather, the question is whether the Participating Property Owners were aware that CSA's call for the referendum was unauthorized, such that they did not have the "full knowledge" required to ratify CSA's actions. Second, for purposes of CSA's summary judgment motion, CSA assumes that it did lack authority to call the referendum. Therefore, CSA's characterization of Jinks's challenge to its authority as a "fringe" theory of which the Participating Property Owners did not need to be aware is unavailing.

circumstances putting a reasonably prudent man on inquiry, ratification of an agent's act cannot be implied against the principal, [] who was ignorant of the facts." Lincoln v. Aetna Cas. & Sur. Co., 386 S.E.2d 801, 803 (S.C. Ct. App. 1989).  The court is not satisfied that a reasonably prudent man would have been on notice of CSA's lack of authority to call the referendum simply because the documents necessary to determine CSA's authority are a matter of public record.  A variety of documents govern the rights and responsibilities of the many entities involved in the Sea Pines Plantation community.  Untangling the interplay between these documents is no easy feat, even when the documents are summarized in relevant part in the complaint.  The 1974 Covenants, and the rights and interests therein, have been subject to several assignments to various entities over the years.  A determination of CSA's authority to call a referendum requires not only a careful review of the 1974 Covenants and its respective assignments, but also a close examination of CSA's bylaws and the 1988 covenants that conveyed to CSA an obligation to manage, maintain, and preserve certain Sea Pines Plantation properties.  See ECF No. 1-3.  Suffice it to say, a layperson could not readily discover whether CSA lacked the authority to call a referendum simply by referencing the public record, as CSA suggests. The fact that CSA has not conceded that it lacked authority to call the referendum, but rather only "assume[s] for purposes of this motion" that it lacked authority, belies CSA's argument that the Participating Property Owners should have known, as a matter of law, that it lacked such authority.  The discovery Jinks requests regarding the Participating Property Owners' full knowledge of the facts of the referendum, including CSA's lack of authority to call the same, could create a genuine

issue of material fact on the issue of ratification. Jinks is therefore entitled to that discovery.

### 2. Election Indicating an Attempt to Adopt the Unauthorized Arrangements

Additionally, Jinks argues that the court should permit her to conduct discovery into the third element of ratification: circumstances or an affirmative election indicating an intent to adopt the unauthorized arrangements. Jinks argues that CSA cannot satisfy this element "if there were any errors or irregularities in the voting process—which is unclear in this instance. . . ." ECF No. 47 at 7. CSA, on the other hand, argues that the vote on the amendment was valid as a matter of law and submits an affidavit of its president and chief operation officer, Samuel Bennett, Jr., to evince the validity of the vote.[4]

The court cannot accept Mr. Bennett's affidavit on the validity of the voting process and the results as fact without giving Jinks an opportunity to conduct discovery into the same. Jinks seeks discovery on multiple issues relating to the validity of the election, including (1) depositions of CSA, ASPPPPO, and Resort witnesses regarding the referendum process; (2) whether individuals who voted in the referendum qualified as Participating Property Owners entitled to vote; (3) the number of properties that were

---

[4] During the hearing, counsel for CSA also argued that any discovery into the voting process and results is inappropriate because Jinks does not allege in her complaint any deficiencies in those areas. The court disagrees. Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." (emphasis added). CSA clearly asserts ratification as a defense to Jinks's claims and exclusively relies on that defense in its motion for summary judgment. The validity of the voting process and the election results are directly relevant to the third element of CSA's ratification defense—an election showing intent to adopt the unauthorized actions. Therefore, Jinks's allegations in her complaint are not determinative of the propriety of conducting discovery on those issues.

sold or transferred between the record date of ownership used by CSA for the referendum and the date it mailed out ballots; (4) whether votes were counted in favor of the amendment that should not have been; (5) whether proxy votes were submitted or properly cast; and (6) the tabulation of the referendum results by a third party company, including the issuance of replacement ballots.  CSA counters that discovery into any of these issues would not affect the ultimate passage of the amendment because, out of 5,351 Participating Property Owners, 4,046 cast votes and 3,551 of those votes were in favor.  For example, CSA argues that only 40 properties were sold in the relevant time period for which Jinks seeks discovery and that only 259 replacement ballots were used, such that any errors in these ballots "cannot have made any difference."  ECF No. 50 at 5.  The court is unconvinced.

CSA asks this court to accept its evidence and assertions regarding the referendum at face value without affording Jinks the opportunity to discover evidence to challenge the same.  The court declines to do so.  Courts generally grant Rule 56(d) motions because of their reluctance "to enter judgment when only one party has presented his version of the case," and that is precisely the situation before the court.  10B Wright, Miller, & Kane, Fed. Prac. & Proc. 4th, § 2741 (2016); see Putney v. Likin, 656 F. App'x 632, 640 (4th Cir. 2016) ("[R]equests for discovery under Rule 56(d) are 'broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" (quoting Greater Baltimore, 721 F.3d at 281)).  Without discovery into the referendum process and results, it would be exceedingly difficult, if not impossible, for Jinks to properly respond to CSA's assertion that the vote was valid and effectively

ratified the allegedly unauthorized referendum. The court's concern is amplified by the fact that all the relevant information regarding the referendum process and results are in CSA's sole control. See McCray, 741 F.3d at 484 (granting Rule 56(d) motion where plaintiff's attorney filed a declaration that plaintiff had not had the opportunity to depose defendants' witnesses and where key evidence was in defendants' control). The information Jinks seeks may create a genuine issue of material fact regarding CSA's ratification defense, and Rule 56(d) exists precisely to afford her a chance to uncover that information. As the Fourth Circuit has observed, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." McCray, 741 F.3d at 483; see Int'l Shortstop, Inc., v. Rally's Inc., 939 F.2d 1257, 1266-67 (5th Cir. 1991) ("[S]ummary judgment is a lethal weapon. We must afford prospective victims some protective armor if we expect them to properly defend against it."). For this reason, the court cannot properly consider CSA's motion for summary judgment at this early stage of litigation and grants Jinks the opportunity to properly defend her action through discovery. To begin the process, the court orders the parties to submit a proposed joint scheduling order for the court's consideration within 14 days of entry of this order.

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES WITHOUT PREJUDICE** CSA's motion for summary judgment and **GRANTS** Jinks's motion for discovery.

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 19, 2021**
**Charleston, South Carolina**