**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| JILL K. JINKS, *individually and as trustee of the Jinks Heritage Trust*, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) No. 9:21-cv-00138-DCN<br>)<br>) **ORDER** |
| SEA PINES RESORT, LLC; COMMUNITY SERVICES ASSOCIATES, INC.; ASSOCIATION OF SEA PINES PLANTATION, PROPERTY OWNERS, INC. and THE ADVISORY BOARD, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

The following matter is before the court on defendant Association of Sea Pines Plantation Property Owners Inc. and the Advisory Board's ("ASPPPO") motion to dismiss, ECF No. 44. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This case concerns a referendum to amend certain Declaration of Covenants and Restrictions dated September 7, 1974, recorded in the Beaufort County, South Carolina Register of Deeds (the "1974 Covenants"). The 1974 Covenants, along with various other recorded covenants and declarations, govern the rights and responsibilities of property owners of Sea Pines Plantation located on Hilton Head Island, South Carolina. The 1974 Covenants were executed by the then-owner and developer of the Sea Pines Plantation community, Sea Pines Plantation Company, Inc. (the "Company."). The Sea Pines Plantation community is comprised of residential properties, commercial

1

properties, and the Sea Pines Resort, as well as golf courses, tennis courts, biking and leisure trails, and beach access. Defendant Sea Pines Resort, LLC (the "Resort") currently owns and operates the Sea Pines Resort.

On November 17, 2020, defendant Community Services Associates Inc. ("CSA") called the referendum at issue to amend the 1974 Covenants. CSA is a South Carolina nonprofit corporation that is the record owner of the roads, gates, open spaces, and common properties in the Sea Pines Plantation community and performs repairs necessary to maintain the attractiveness and value of the community and its properties. Before calling the referendum, CSA sought approval from a Resort representative, and the requested approval was given.

The proposed amendment, if enacted, would create an "Infrastructure Improvement Fund" and impose an additional annual assessment of $600.00 upon residential property owners in Sea Pines Plantation, including plaintiff Jill K. Jinks ("Jinks"). The Infrastructure Improvement Fund would be "used only for the repair, replacement, addition and improvement of the roads, bridges, bulkheads, leisure trails, storm water facilities and systems located in or servicing Sea Pines. . . ." ECF No. 38, Amend. Compl. ¶ 54. Under the 1974 Covenants, "Participating Property Owners" are entitled to vote on the referendum. A "Participating Property Owner" is defined under the 1974 Covenants as

> all those owners of Residential lots, and Family Dwelling Units, except the Company, who execute that certain Agreement, known as the 'Advisory Group Agreement', and all owners of Residential lots and Family Dwelling Units who purchase property in Sea Pines Plantation which is subject to the payment of the same or greater dollar amount of the assessments provided for herein.

ECF No. 38-1 at 3. For the amendment to be approved, seventy-five percent of the Participating Property Owners who return a ballot must vote in favor of the amendment.

The proposed amendment states that it is made by the Resort "with the acknowledgement of [CSA] and [ASPPPO]." Amend. Compl. ¶ 75. ASPPPO is a nonprofit corporation formed in 1973, whose stated mission is to provide a forum for and to promote the common good and general welfare of residential property owners on Sea Pines Plantation and to represent residential property owners in all matters in pursuit of these objectives. On November 30, 2020, the ASPPPO board of directors held a special meeting adopting a resolution approving the proposed amendment to the 1974 Covenants. Following the passage of the resolution, ASPPPO encouraged its members to vote in favor of the referendum.

Jinks, as a residential property owner in Sea Pines Plantation, objected to the referendum on the basis that none of the named defendants, including CSA, the Resort, or ASPPPO (collectively, "defendants"), had the authority to call for or pursue any referendum to amend the 1974 Covenants. Despite Jinks' objection, defendants moved forward with the referendum. At a CSA board of directors meeting held on January 28, 2021, the chair of the board advised that the referendum had passed.

On January 13, 2021, one week before referendum ballots were due, Jinks filed the instant action, asserting (1) declaratory judgment claims against the Resort and CSA; (2) breach of contract claims against CSA and ASPPPO; and (3) civil conspiracy, nuisance, and permanent injunction claims against all defendants for their actions taken in connection with the referendum. In particular, Jinks seeks a declaration that defendants lacked the legal authority to call for the subject referendum or to implement

the referendum and that the proposed amendment is invalid. On March 29, 2021, ASPPPO filed a motion to dismiss. ECF No. 44. On April 12, 2021, Jinks responded in opposition, ECF No. 51, and on April 19, 2021, ASPPPO replied, ECF No. 53. On June 30, 2021, Jinks filed a supplement to her response to the motion to dismiss, notifying the court of new authority on issues discussed in the parties' briefings. ECF No. 70. On July 7, 2021, ASPPPO responded to Jinks' supplemental filing. ECF No. 71. The court held a hearing on the motion to dismiss on September 28, 2021. ECF No. 73. As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pled allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.  DISCUSSION

ASPPPO requests that the court dismiss Jinks' civil conspiracy, nuisance, and injunctive relief claims against it. The court addresses each claim in turn.

**A. Civil Conspiracy**

In their initial briefings, both parties argued ASPPPO's motion to dismiss under the established elements for civil conspiracy in South Carolina at the time. Under that approach, to establish a claim for civil conspiracy, a plaintiff was required to plead and prove: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) causing plaintiff special damages. See Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009), overruled by Paradis v. Charleston Cty. Sch. Dist., 861 S.E.2d 774, 780 (S.C. 2021); McMillan v. Oconee Mem'l Hosp., Inc., 626 S.E.2d 884, 886 (S.C. 2006), overruled by Paradis, 861 S.E.2d at 780. ASPPPO initially challenged Jinks' civil conspiracy claim under each of these three elements, and Jinks framed her arguments in her response accordingly. See ECF No. 44-1 at 5 (citing Hackworth, 682 S.E.2d at 874); ECF No. 51 at 4 (citing McMillan, 626 S.E.2d at 886).

As the parties acknowledged in their supplemental briefings, the Supreme Court of South Carolina recently changed the calculus for establishing a civil conspiracy claim. Specifically, the South Carolina Supreme Court in Paradis, 861 S.E.2d at 780, explicitly

5

abolished the third element, which required the plaintiff to plead special damages. Following, Paradis, under South Carolina law, "a plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." 861 S.E.2d at 780. Moreover, the court in Paradis confirmed that "[s]ince civil conspiracy is an intentional tort, an intent to harm, which has also been discussed in our conspiracy law, remains an inherent part of the analysis." Id. at 780. As such, the court will construe ASPPPO's arguments that Jinks failed to plead that the "primary purpose" of the conspiracy was to harm her as, instead, an argument that Jinks simply failed to plead intent to harm. The court will also disregard ASPPPO's arguments regarding special damages. Therefore, the court discusses only Jinks' arguments regarding intent to harm and acts in furtherance of the conspiracy in turn below.

          1. **Intent to Harm**

The court finds that Jinks fails to allege that ASPPPO acted with intent to harm. According to ASPPPO, the amended complaint can only fairly be read as alleging that defendants intended to amend the 1974 Covenants to create a fund to repair Sea Pines Plantation's infrastructure. According to Jinks, her complaint should be read as alleging that defendants conspired with the intent to permanently alter Jinks' property rights by passing an unlawful referendum and imposing a new, additional annual assessment. Under either interpretation of the amended complaint, Jinks has not sufficiently alleged that defendants acted with intent to harm her.

6

"Civil conspiracy requires a specific intent to injure the plaintiff." Sizemore v. Georgia-Pac. Corp., 1996 WL 498410, at *13 (D.S.C. Mar. 8, 1996) (citing Bivens v. Watkins, 437 S.E.2d 132, 134 (S.C. Ct. App. 1993)), aff'd sub nom. Sizemore v. Hardwood Plywood & Veneer Ass'n, 114 F.3d 1177 (4th Cir. 1997). Some evidence that the alleged conspirators "acted with malice towards" the plaintiff is required. Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc., 992 F.2d 59, 63 (4th Cir. 1993) (applying South Carolina law). Where, for example, alleged conspirators acted out of a general desire to make a profit rather than to harm the plaintiff, a claim for civil conspiracy cannot lie. Bivens, 437 S.E.2d at 136. Thus, a claim for civil conspiracy requires at least some degree of relationship between the plaintiff and the alleged conspirators.

Here, even if ASPPPO intended to impose an annual assessment on homeowners, including Jinks, these allegations fall short of pleading that defendants intended to injure Jinks by doing so. Indeed, it is undisputed that the assessment was intended to create the Infrastructure Improvement Fund to repair, replace, and improve roads, bridges, leisure trails, and storm water facilities and systems within Sea Pines Plantation. By Jinks' own account, then, defendants' efforts were directed at benefiting the Sea Pines community, rather than at harming Jinks. The amended complaint cannot be reasonably construed as alleging malice towards Jinks. Because she does not allege that defendants conspired with the intent to injure her, Jinks' claim for civil conspiracy fails. The court therefore grants ASPPPO's motion to dismiss this claim and also sua sponte dismisses this claim as to the Resort and CSA.

### 2. Acts in Furtherance of the Conspiracy

Even if Jinks properly alleged that ASPPPO acted with intent to harm, Jinks' civil conspiracy claim also fails because she does not allege that ASPPPO acted in furtherance of the conspiracy in a manner separate and independent from her other causes of action. "In a civil conspiracy claim, one must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." Hackworth, 682 S.E.2d at 875. Stated another way, "'[w]here the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.'" Todd v. S.C. Farm Bureau Mut. Ins. Co., 278 S.E.2d 607, 612 (S.C. 1981) (quoting 15A C.J.S. Conspiracy § 33, at 718), overruled on other grounds by Paradis, 861 S.E.2d at 780; see also Kuznik v. Bees Ferry Assocs., 538 S.E.2d 15, 21 (S.C. Ct. App. 2001) ("Because [the third party plaintiff] . . . merely realleged the prior acts complained of in his other causes of action as a conspiracy action but failed to plead additional facts in furtherance of the conspiracy, he was not entitled to maintain his conspiracy cause of action."); Doe v. Erskine Coll., 2006 WL 1473853, at *17 (D.S.C. May 25, 2006) (granting defendant's motion for summary judgment on plaintiff's civil conspiracy claim because "the Complaint does not plead specific facts in furtherance of the conspiracy; instead the Complaint simply restates the alleged wrongful acts in relation to the plaintiff's other claims for damages."). The parties do not argue in their supplemental briefings that Paradis abolished this pleading requirement, and the court is satisfied that it did not. See Paradis, 861 S.E.2d at 779–80 (explaining that the

court in Todd, 278 S.E.2d at 607, "correctly concluded the civil conspiracy claim failed as a matter of law" where the "only wrongful acts alleged were those for which damages had already been sought" and "the plaintiff's repetition of the same acts as the prior claims was insufficient to salvage the claim").

Jinks argues that ASPPPO took several overt actions to further the conspiracy, including but not limited to (1) adopting a resolution in favor of the referendum and amendment; (2) sending a newsletter actively encouraging its members to vote in favor of the referendum and amendment; and (3) putting its name and consent to the amendment on the face of the referendum and amendment. All of these allegations are specifically incorporated by reference into Jinks' causes of action for breach of contract and nuisance. The amended complaint fails to allege a single independent and separate act taken by ASPPPO in furtherance of the alleged conspiracy that does not also serve as the basis for Jinks' other causes of action. At most, Jinks' civil conspiracy cause of action merely summarizes the same acts that also serve as the bases for the other claims in the civil conspiracy cause of action. For example, ASPPPO's act of allegedly acknowledging and supporting the referendum is also alleged at paragraphs 100 and 101 of the amended complaint as the basis of Jinks' cause of action for breach of contract. Amend. Comp. ¶¶ 100, 101. Similarly, paragraph 114 of the amended complaint alleges ASPPPO's "approval and active[] encourage[ment]" of the proposed referendum as support for Jinks' nuisance cause of action. Amend. Compl. ¶ 114. Because "[t]he only alleged wrongful acts pled are those for which damages have already been sought," Todd, 278 S.E.2d at 611, Jinks' claim of civil conspiracy against ASPPPO fails and must be dismissed under this independent basis as well. See Coker v. Norwich Com. Grp., Inc.,

9

2021 WL 4037472, at *6 (D.S.C. Sept. 3, 2021) (holding that the plaintiff's civil conspiracy failed because "he has merely reincorporated his previous claims and added conclusory allegations the Individual Defendants were engaged in a civil conspiracy").

During the hearing, Jinks argued that she should be permitted to plead civil conspiracy in the alternative, and, therefore, her claim against ASPPPO should not be dismissed for failing to plead acts in furtherance of the conspiracy separate and independent from facts alleged in her other causes of action. This argument has been considered and rejected by both South Carolina state courts and courts in this district. In Hackworth, the South Carolina Court of Appeals held that a party may plead alternative theories in cases involving civil conspiracy; however, "when a party wishes to assert multiple causes of action, including civil conspiracy, it must allege facts in furtherance of the conspiracy and special damages that are separate and independent of the other acts and damages that underlie the causes of action within the same complaint." 682 S.E.2d at 876. Jinks cannot avoid pleading separate and independent acts in furtherance of the conspiracy by simply couching her conspiracy claim as an alternative to her breach of contract and nuisance causes of action. See Howard v. Allen Univ., 2012 WL 3637754, at *8 (D.S.C. Feb. 27, 2012), report and recommendation adopted, 2012 WL 3637746 (D.S.C. Aug. 22, 2012) (rejecting the plaintiff's argument that his civil conspiracy claim should not be dismissed because he pled civil conspiracy as an alternative to his defamation claim, such that those claims were not duplicative); Watson v. Adams, 2017 WL 1001122, at *18 (D.S.C. Mar. 15, 2017) (finding dismissal of a civil conspiracy claim appropriate where the plaintiff pled that claim in the alternative but failed to allege additional acts in furtherance of a conspiracy rather than reallege other

claims within the complaint). As already noted, Jinks' civil conspiracy claim lacks any allegation of acts by ASPPPO that are separate and independent from other wrongful acts alleged in her complaint, and, accordingly, the civil conspiracy claim against ASPPPO must be dismissed.[1] Jinks' attempt to recast her conspiracy claim as an alternative claim does not save it from dismissal.

### B. Nuisance

Next, ASPPPO requests that the court dismiss Jinks' real property nuisance claim against it. "A nuisance . . . provides a remedy for invasions of a property owner's right to the use and enjoyment of his property." Babb v. Lee County Landfill SC, LLC, 747 S.E.2d 468, 473 (S.C. 2013) (citing Clark v. Greenville Cnty., 437 S.E.2d 117, 119 (S.C. 1993) ("Nuisance law is based on the premise that '[e]very citizen holds his property subject to the implied obligation that he will use it in such a way as not to prevent others from enjoying the use of their property.'")). Nuisance requires "a substantial and unreasonable interference with the plaintiff's use and enjoyment of his property." Sanders v. Norfolk Southern Ry. Co., 400 F. App'x 726, 729 (4th Cir. 2010).

Jinks alleges that "by conspiring to promulgate the unauthorized referendum and proposed amendment to the 1974 Covenants," defendants interfered with her "use and enjoyment of her property." Amend. Compl. ¶ 112. Specifically, Jinks alleges that defendants "have interfered with [Jinks'] vested interest in the provisions of the 1974

---

[1] Because the briefings submitted in connection with ASPPPO's motion to dismiss only address ASPPPO's acts in furtherance of the alleged conspiracy, the court does not determine whether the civil conspiracy claim against the Resort and CSA should also alternatively be dismissed on this ground.

Covenants regarding their modification, as well as in the provisions of the 1974 Covenants pertaining to assessments." Id.

ASPPPO claims there can be no viable nuisance claim against it because ASPPPO itself did not propose the referendum. This argument lacks merit. Jinks alleges that ASPPPO participated in the referendum because its name appeared on the proposed amendment and it encouraged its members to vote in favor of the referendum. Therefore, to the extent that the referendum interfered with Jinks' use and enjoyment of her property, Jinks sufficiently states a claim for the same against ASPPPO. Nevertheless, the court does not find that the referendum interfered with Jinks' use and enjoyment of her property in any way.

ASPPPO argues that Jinks has not alleged the type of interest in property recognized by South Carolina for purposes of finding a loss of "use and enjoyment" of real property, and the court agrees. ECF No. 71 at 5 (citing Babb, 747 S.E.2d at 468). Jinks does not cite a single case where a plaintiff stated a claim for nuisance against a homeowner's association or property management group for amending governing documents or imposing an additional assessment. During the hearing, counsel for Jinks conceded that she could not locate such a case on point, and the court likewise was unable to identify any authority acknowledging a claim similar to Jinks'. Indeed, Jinks' claim is far cry from the nuisances to real property commonly recognized by South Carolina courts, such offensive odors, gas leaks, impact of commercial development, and toxic substances. To the extent Jinks maintains that the assessment imposed by the amendment interferes with her use and enjoyment of her property by reducing its value, ASPPPO argues that "[m]erely suffering a reduction in property value is not, by itself, an

interest [in] property [recognized] by the nuisance doctrine." Id. (citing Strong v. Winn-Dixie Stores, Inc.,125 S.E.2d 628 (S.C. 1962)).  The court agrees.  In Winn-Dixie Stores, the South Carolina Supreme Court held that even if construction of a new supermarket in close proximity to plaintiffs' homes would result in depreciation of their home values, it would not necessarily amount to a nuisance.  125 S.E.2d at 634.  Jinks cannot rely on the fact that the proposed assessment may reduce the value of her property to establish nuisance, and the court fails to see how modifying the 1974 Covenants otherwise interferes with Jinks' use and enjoyment of her property in a manner that South Carolina recognizes as a nuisance.  As such, the court grants the motion to dismiss Jinks' nuisance cause of action against ASPPPO for failure to state a claim.  Moreover, because Jinks does not allege that the Resort and CSA interfered with the use and enjoyment of her property in any way other than modifying the 1974 Covenants to impose an additional assessment, the court likewise sua sponte dismisses the nuisance cause of action against both of these defendants.

### C. Injunction

Lastly, ASPPPO requests that the court dismiss Jinks' claim for injunctive relief against it.  In her amended complaint, Jinks asks that the court enjoin the implementation, approval, execution, and/or recording of the proposed amendment to the 1974 Covenants by defendants.  A plaintiff seeking a permanent injunction must show that (1) it has suffered irreparable injury; (2) the available legal remedies are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant warrants an equitable remedy; and (4) the public interest would not be disserved by a permanent injunction.  eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006); see also Herrera

v. Finan, 176 F. Supp. 3d 549, 568 (D.S.C. 2016), aff'd, 709 F. App'x 741 (4th Cir. 2017).

In its motion to dismiss, ASPPPO argues that Jinks' request for injunctive relief against it fails because she cannot show a likelihood of success on the merits. As Jinks points out, in so doing, ASPPPO confuses her claim as one for preliminary injunctive relief, rather than for permanent injunctive relief. To state a claim for permanent injunctive relief, Jinks is not required to show a likelihood of success on the merits, and the court rejects ASPPPO's contention to the contrary. Otherwise, in its reply, ASPPPO argues that the court should dismiss the claim because Jinks has not demonstrated irreparable injury or absence of an adequate remedy at law. Specifically, ASPPPO maintains that the only harm Jinks alleges is the annual assessment imposed by the amendment, which is "$600.00 per Family Dwelling Unit and $360 per residential lot." Amend. Compl. at ¶ 52. ASPPPO argues that "[t]he only possible damage which will result from a denial of plaintiff's motion is a loss of profits, which will be readily ascertainable and recoverable and hence such damages are not irreparable." ECF No. 71 at 7 (citing Columbia Broad. Sys., Inc. v. Custom Recording Co., 189 S.E.2d 305, 311 (S.C. 1972)). ASPPPO miscites Columbia Broad for this proposition. To begin, Columbia Broad involved a temporary injunction, which, as already noted, is not at issue in this motion. Moreover, in the line ASPPPO cites from Columbia Broad, the Supreme Court of South Carolina was quoting the lower court's reasoning for denying a temporary injunction. Columbia Broad, 189 S.E.2d at 311. But the Supreme Court of South Carolina specifically rejected that reasoning, explaining that when a legal remedy is "impracticab[le]" or when "successive actions at law would be necessary to protect the

14

plaintiff's rights," "the existence of the legal remedy is not an obstacle to the exertion of the equitable power.'" Id. at 312 (citing Kirk v. Clark, 4 S.E.2d 13 (S.C. 1939)). Therefore, the caselaw ASPPPO cites does not support its argument that Jinks is not entitled to injunctive relief because her damages are readily ascertainable and recoverable. Here, if Jinks succeeds in proving the amendment is invalid, it would be impracticable to simply award Jinks the present value of the annual assessment and permit the recording and implementation of the amendment, such that Jinks and all Sea Pines Plantation property owners are indefinitely subject to an invalid annual assessment. Such an approach would likewise presumably require successive actions to provide relief to other property owners subject to the assessment. Because ASPPPO puts forth no argument that is properly grounded in South Carolina law to support its request for dismissal of Jinks' claim for permanent injunction, the court declines to dismiss that claim.

Notably, although the court grants the motion to dismiss Jinks' civil conspiracy and nuisance claims against ASPPPO, Jinks' breach of contract claim remains pending, and ASPPPO does not challenge that claim in its motion. As such, Jinks still has a substantive claim pursuant to which the court could plausibly grant injunctive relief against ASPPPO should Jinks succeed in this action. See City of Charleston v. Joint Comm'n, 473 F. Supp. 3d 596, 632 (S.D. W. Va. 2020) ("[A]n injunction is merely a remedy flowing from the underlying substantive claims rather than an independent cause of action itself."). Jinks' complaint requests that the court enjoin ASPPPO from taking any further action to record, implement, or approve the proposed amendment. Jinks' breach of contract cause of action alleges, inter alia, that ASPPPO breached the 1974

Covenants and its own bylaws by acknowledging and supporting the referendum. Construing these allegations in the light most favorable to Jinks, as it must, the court finds that Jinks' breach of contract claim plausibly provides Jinks a basis for the injunctive relief requested.[2] Therefore, Jinks's injunctive relief claim survives the instant motion to dismiss.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss Jinks' civil conspiracy and nuisance causes of action against ASPPPO, **DENIES** the motion to dismiss Jinks' cause of action for injunctive relief against ASPPPO, and sua sponte **DISMISSES** Jinks' civil conspiracy and nuisance claims against the Resort and CSA.

---

[2] During the hearing, counsel for ASPPPO argued for the first time that ASPPPO is not a proper party against whom Jinks may seek injunctive relief, as it does not have the power to record or implement the amendment at issue. Counsel for Jinks argued that ASPPPO's signature is required before the amendment to the 1974 Covenants can be recorded, and as such, her claim for injunctive relief against ASPPPO is appropriate. Counsel for Jinks conceded that Jinks did not explicitly allege in the complaint that ASPPPO had the power to record the amendment, but explained that ASPPPO's power to do so is reflected in the parties' joint stipulation concerning her withdrawal of her motion for preliminary injunction. ECF No. 18. However, even if the court took judicial notice of the stipulation, it does not affirmatively state that ASPPPO has any power to enact or implement the amendment; it merely states that "to the extent ASPPPO has any [such] right," it will not exercise it. Id. at 2. Still, construing the allegations in the light most favorable to Jinks and drawing all inferences in her favor, Jinks plausibly alleges that injunctive relief against ASPPPO will be necessary to prevent it from further approving, supporting, or participating in the implementation and recording of the amendment. Jinks need not have explicitly pled that ASPPPO has the power to record the amendment to state a claim for injunctive relief against it.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**October 8, 2021
Charleston, South Carolina**

17